# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JERRY P. HUGHES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-07-431-JHP-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Jerry P. Hughes requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on May 24, 1962, and was 44 years old at the time of the administrative hearing. He has a ninth grade education and previously worked as a die cast operator. The claimant alleges he has been disabled since December 17, 2002, because of degenerative disc disease of the lumbar spine, degenerative joint disease, right shoulder pain, and osteoarthritis.

## Procedural History

On September 3, 2004, the claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. An administrative hearing was conducted and ALJ Charles Headrick determined that the claimant was not disabled on February 5, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, that

he could lift and/or carry at least ten pounds frequently and at least twenty pounds occasionally; stand and/or walk for at least six hours total during an eight-hour workday; and sit for at least six hours total during an eight-hour workday. The claimant could frequently climb ramps or stairs and balance and kneel but was limited to only occasional stooping, crouching, or crawling and was to never climb ladders, ropes or scaffolds (Tr. 26). The ALJ concluded that the claimant was not disabled because there was work he could perform existing in significant numbers in the regional and national economies, *e. g.*, production inspector, food service worker, assembly work, and machine operator (Tr. 29).

**Review**

The claimant's sole contention is that the ALJ failed to properly evaluate his credibility with regard to his complaints of pain. The undersigned Magistrate Judge finds that this contention is without merit and accordingly recommends that the Commissioner's decision be AFFIRMED.

Deference is generally given to an ALJ's credibility determination unless there is some indication that the ALJ misread the medical evidence taken as a whole. *Casias*, 933 F.2d at 801. In assessing a claimant's complaints of pain, an ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain

'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

The record reveals that the claimant suffered from degenerative disc disease of the lumbar spine, degenerative joint disease, right shoulder pain, and osteoarthritis, all impairments that the ALJ determined were severe (Tr. 24). A CT from June 1995 revealed a "mild posterior disc bulge at L5-S1 without appreciable thecal sac effacement or nerve root impingement." (Tr. 109). The claimant continued to suffer from back pain, so in March 2000 he underwent a lumbar fusion at the L5-S1 level (Tr. 206-07, 228-29). After his pain failed to subside, the claimant underwent surgery for hardware removal and fusion exploration in October 2000 (Tr. 214, 218-20). The claimant also suffered from pain in his left shoulder and was diagnosed with a left shoulder impingement with a possible partial rotator cuff tear in May 2002 (Tr. 274-75). He underwent shoulder surgery in August 2002 (Tr. 204-05). The claimant's physician Dr. Jay Lorton, M.D., noted in December 2002 that although the claimant had progressed slowly from his shoulder surgery, he had made improvement. He released the claimant "to activities as tolerated [and] list[ed] him for no work restrictions." (Tr. 262).

The claimant was examined by consulting physician Dr. Baha Abu-Esheh, M.D., in December 2004. His complaints included lower back pain, left shoulder pain and weakness, and left leg pain. He was taking methadone for pain. His examination revealed grip strength

of "5/5 bilaterally strong and firm" and gross and fine manipulation with the hands, fingertip to thumb opposition, and fine tactile manipulation of objects were all described as "adequate" or "normal." A full range of motion was found in all extremities with no tenderness. The claimant's cervical and thoracic spine were non-tender with a full range of motion, and the lumbar spine was tender with pain and muscle spasms but a full range of motion. Straight leg raising was "negative bilaterally in both sitting and supine positions." The claimant's gait was noted to be "safe and stable with appropriate speed," and heel/toe walking was normal. Dr. Abu-Esheh concluded that the claimant suffered from chronic pain in his back and pain in his shoulders and suggested the claimant follow up with his physician for control of his symptoms (Tr. 177-85).

The claimant was seen by Dr. Norma Sneed, M.D., on several occasions from November 2005 through June 2006 for his back and leg pain. He continued to take methadone and was also prescribed morphine. He described his pain at a level of eight (Tr. 194-97). He also was seen by Dr. Venkatesh Movva, M.D., on one occasion in September 2006. The claimant complained of chronic leg and back pain, shoulder pain, and described his pain level as an eight on a scale of ten. He continued to take methadone for pain. Dr. Movva's examination of the claimant showed flexion in the lumbar spine up to sixty degrees and extension of ten degrees. The claimant exhibited a decreased range of motion in abduction and extension of the left shoulder as compared to the right. Motor strength was decreased in the left lower extremity (3/5) and slightly decreased on the right (4/5), and

straight leg raising was positive in the left lower extremity when elevated at sixty degrees. The claimant's gait was normal without the use of any assistive devices. Dr. Movva assessed the claimant with "failed lumbar fusion surgery syndrome[,] [p]ersistent left lower extremity radiculopathy[,] [and] [c]hronic shoulder pain." The claimant continued on methadone for his pain (Tr. 211-12).

At the administrative hearing, the claimant testified that he left his most recent job in December 2001 because his employer closed. He attempted to find other work but was unable to do so (Tr. 315-16). He was now unable to work because of problems with his back, leg, and shoulder. The claimant had suffered low back pain since 1995, which continued after he underwent surgery and then later had the hardware removed (Tr. 317, 329). His left leg pain began in 1995 and ran from his hip through his back into his lower heel, and his left shoulder pain began in 2000-2001 and was constant (Tr. 318). His medication improved his condition but caused drowsiness (Tr. 319-20). The claimant had to lie down for half of the day, but he would sometimes walk around a bit (Tr. 320, 328). His sister prepared most of his meals and did the laundry and shopping, but he sometimes went with her to shop and helped with dinner and housework. He did not visit family often and had no hobbies, but he did attend church (Tr. 321-22). The claimant described his appetite as fair, and he only slept three to five hours per night with one or two thirty minute naps per day (Tr. 322-23). He could sit in a chair for an hour or two, stand in "one general area" for fifteen to twenty minutes, and walk for ten to fifteen minutes before having to stop and rest. The claimant

thought he could walk a total of three hours in an eight-hour day, stand for a total of two to three hours in a day, and sit for two to three hours in a day. He could lift thirty to forty pounds with his right hand and five to ten with his left, touch his toes, climb stairs, and squat, but not without experiencing pain in his back (Tr. 323-25, 327, 332). He drove on occasion and could sometimes extend his arms out in front of him but had problems reaching overhead because of his left shoulder (Tr. 326, 333). The claimant described his grip strength as a two in the left hand and two to three in the right hand (Tr. 325-26). His left hand was weaker because it had been broken twice (Tr. 332). He had some numbness and tingling in the left foot, but had never fallen when walking (Tr. 328). The claimant estimated his pain level at a six or seven on a scale of ten (Tr. 327), and he testified the pain affected his concentration (Tr. 330).

The ALJ summarized the medical evidence and the claimant's testimony from the administrative hearing and "considered . . . the extent to which th[e] [claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§] 404.1529 and [§] 416.929 and SSRs 96-4p and 96-7p." (Tr. 26). He indicated that Dr. Movva's findings, *i. e.*, that the claimant had a decreased range of motion in the left shoulder and that the fusion surgery had failed causing radiculopathy, actually provided some support for the claimant's impairments. But he also specifically mentioned the consultative examination wherein Dr. Abu-Esheh determined the claimant's straight leg raising was negative, leg strength was normal, all of the claimant's

extremities had a full range of motion, and the claimant suffered some tenderness and muscle spasms. The ALJ determined that the claimant's credibility was "diminished substantially" because: (i) "he did not quit work due to his pain[;]" (ii) "there [was] no objective medical evidence from December 17, 2002 until November 18, 2005, a period of almost three years[;]" and, (iii) "Dr. Lorton released the claimant to return to work without restrictions on December 12, 2002." (Tr. 27). Further, when assessing the claimant's testimony, the ALJ made specific findings with regard to several of the factors listed in Social Security Ruling 96-7p, 1996 WL 374186. For example, he recounted the claimant's testimony as it specifically related to daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate or aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication, received for pain or other symptoms; and any measures other than treatment used to alleviate pain or other symptoms (Tr. 27-28).[2] After considering all this evidence, the ALJ concluded "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (Tr. 27).

---

[2] The claimant argues that the ALJ did not address *all* of the factors listed in Social Security Ruling 96-7p. However, the ALJ is not required to perform "a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). All that is required is that "the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility[.]" *Id*.

As the foregoing demonstrates, the ALJ linked his credibility determination to the evidence as required by *Kepler*, and he provided specific reasons for the determination in accordance with *Hardman*. There is no indication that the ALJ misread the medical evidence as a whole, so his determination as to the claimant's credibility is entitled to deference. *See Casias,* 933 F.2d at 801. The undersigned Magistrate Judge therefore finds this contention is without merit.

## Conclusion

The undersigned Magistrate Judge FINDS that the decision of the Commissioner is supported by substantial evidence and that correct legal standards were applied, and therefore RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be AFFIRMED. The parties are herewith given ten (10) days to file any objections with supporting briefs. Failure to object to the Report and Recommendation will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this 19th day of November, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**